UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| THERESA MCKENNEY, *et al.*, | ) | Case No. 1:23-cv-2360 |
| | ) | |
| Plaintiffs, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Jonathan D. Greenberg |
| EXACT CARE PHARMACY, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## OPINION AND ORDER

Plaintiffs Theresa McKenney, Shirley Patterson, and the National Federation of the Blind, Inc., bring this action against Exact Care Pharmacy, LLC, which ships prescription medications to patient's homes, for allegedly denying blind individuals an equal opportunity to access its services, in violation of the Rehabilitation Act, the Patient Protection and Affordable Care Act, and State law. Since the outset of the case, the Court has questioned whether the National Federation of the Blind has standing. The parties have briefed that issue and provided supplemental briefs in response to a recent Sixth Circuit decision. In their briefs, the parties go beyond the standing of the National Federation of the Blind. In this ruling, the Court addresses each standing issue that the parties raise.

### STATEMENT OF RELEVANT FACTS

At this stage of the proceedings, where the parties are engaged in ongoing discovery, the record contains the following facts.

A. **Exact Care Pharmacy**

Exact Care Pharmacy is a mail-order pharmacy that claims to offer patients a more convenient and safer way to access their medication, particularly those that take multiple medications a day and have multiple providers. (ECF No. 30, ¶ 13, PageID #306.) Exact Care takes all the medications a patient is prescribed and packages them in what it calls the "ExactPack." (*Id.*) The ExactPack is a 30-day supply of a patient's medication sorted into individual, tear-away packets based on the day and time for a patient to take the medications as prescribed. (*Id.*) The tear-away packets are then connected on a roll to allow the patient to tear off the packet when they need to take their medication. (*Id.*) The individual packets of medicine contain all pertinent information, including:

> [T]he name, strength, and dosage for each medication in the packet, the day and time the medicine should be consumed (*e.g.*, 'Friday Morning'), the number of each type of pull in the packet, description of each medication (which may include the color, shape, and what is printed on the pill), and the number of packets for this day and time of day (i.e., whether that packet is '1/1' or '1/2' for 'Friday Morning').

(*Id.*, ¶ 14, PageID #306.)

B. **Plaintiffs Theresa McKenney and Shirley Patterson**

Plaintiffs Theresa McKenney and Shirley Patterson are both older blind women who previously used Exact Care to receive their medications. (ECF No. 30, ¶¶ 8–9, PageID #304.) Ms. McKenney was an Exact Care patient until April 2023 (*id.*, ¶ 8, PageID #304), and Ms. Patterson was a patient until 2022 at the latest (*id.*, ¶ 9, PageID #304). Ms. McKenney and Ms. Patterson chose to use Exact Care over traditional brick-and-mortar pharmacies because they believed that it would be more

2

convenient. (*Id.*, ¶¶ 21–22, 57 & 60, PageID #308 & 315–16.) They did so after meeting with an Exact Care representative who assured them Exact Care would be just as reliable as traditional pharmacies but more convenient. (*Id.*, ¶¶ 20–21, 57 & 60, PageID #307–08 & 315–16.) Ms. McKenney and Ms. Patterson preferred Exact Care because they would no longer have to rely on family members to help get their medications from the pharmacy and could receive them by mail instead. (*Id.*)

After switching to Exact Care, Ms. McKenney and Ms. Patterson began encountering difficulties obtaining information about their medications in an alternative format to normal, standard print documents. (*Id.*, ¶¶ 24–40 & 62–68, PageID #308–12 & 316–317.) They requested alternative formats for information on their medications due to their visual impairments and blindness. (*Id.*) Ms. McKenney requested that Exact Care put "ScripTalk" labels on her medication which read aloud a blind patient's medicine information when scanned on the patient's home "station reader." (*Id.*, ¶¶ 26–28, PageID #309–10.) Ms. Patterson also requested "ScripTalk" or a similar technology be provided with her medicine information in a large print. (*Id.*, ¶¶ 63–64, PageID #316–17.) Exact Care never provided Ms. McKenney or Ms. Patterson with the requested or similar accommodations. (*Id.*, ¶¶ 24–40 & 62–68, PageID #308–10 & 316–17.)

As a result of not having access to the information about their medication, Ms. McKenney and Ms. Patterson each allegedly suffered injury. (*Id.*) The second amended complaint alleges that Ms. McKenney took double her prescribed dose of medication for months that resulted in kidney damage and nerve damage in her feet

3

(*id.*, ¶¶ 35–37, PageID #311–12), and Ms. Patterson suffered from congestive heart failure, shortness of breath, leg swelling, and hair loss (*id.*, ¶¶ 69–72, PageID #317–19).

### C. National Federation of the Blind

Throughout their time with Exact Care and to this day, Ms. McKenney and Ms. Patterson have been members of the National Federation of the Blind. NFB is the "oldest and largest national organization of blind persons." (*Id.*, ¶10, PageID #304.) Currently, NFB has approximately 50,000 members. (*Id.*) Many of whom, including Ms. McKenney and Ms. Patterson, rely on Exact Care for their pharmaceutical needs and often require access to their medical information in an alternative format. (*Id.*, ¶11, PageID #305.) NFB's "ultimate purpose" is the "complete integration of the blind into society on a basis of equality." (*Id.*) NFB does this by working "to ensure that the blind have an equal opportunity to access information related to their health care" and that blind patients are provided access through the use of applicable technology. (*Id.*)

## STATEMENT OF THE CASE

In the second amended complaint, Plaintiffs bring three claims. In Count I, Ms. McKenney and NFB allege a violation of Section 504 of the Rehabilitation Act. (*Id.*, PageID #321.) In Count II, all three Plaintiffs allege a violation of Section 1557 of the Patient Protection and Affordable Care Act. (*Id.*, PageID #324.) Ms. McKenney and Ms. Patterson bring a negligence claim against Exact Care in Count III. (*Id.*, PageID #328.)

4

At the initial case management conference, the Court questioned whether the National Federation of the Blind has standing. At the time, the complaint brought the negligence claim in Count III on behalf of NFB as well. (*See* ECF No. 1, PageID #27.) But the core of the Court's concern and the parties' discussion at that time involved associational standing more broadly. Eventually, the Court ordered briefing on NFB's standing. (ECF No. 19.) That order led to the filing of the second amended complaint, which amended the parties bringing Count III, the negligence claim.

After the decision in *Dayton Area Chamber of Commerce v. Kennedy*, 147 F.4th 626 (6th Cir. 2025), the Court ordered supplemental briefing on the question of standing. (ECF No. 33; ECF No. 48.) That briefing addresses the standing of the National Federation of the Blind. In addition, Defendant argues that Ms. McKenney and Ms. Patterson do not have standing to seek injunctive and declaratory relief, necessitating a determination that NFB lacks standing as well. (ECF No. 53, PageID #506–11.) Accordingly, the Court addresses the individual standing of Ms. McKenney and Ms. Patterson to pursue injunctive relief before turning to the issue of NFB's associational standing.

## ANALYSIS

Standing presents a "threshold determinant[] of the propriety of judicial intervention." *Warth v. Seldin*, 422 U.S. 490, 517–18 (1975). "Standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "[A]t an irreducible minimum, Article III requires the party who invokes the court's authority to show

5

that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant" and that "the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 542 (1986) (cleaned up). To establish Article III standing, a plaintiff must satisfy three elements: (1) "the plaintiff suffered an 'injury in fact' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical'"; (2) "the injury must be 'fairly traceable to the challenged action of the defendant'"; and (3) "'it must be likely . . . that the injury will be redressed by a favorable decision.'" *Gaylor v. Hamilton Crossing CMBS*, 582 F. App'x 576 (6th Cir. 2014) (quoting *Lujan*, 504 U.S. at 560–61).

Where a plaintiff requests injunctive relief, the "injury inquiry . . . is twofold" and "requires a plaintiff to show both 'past injury and a real and immediate threat of future injury.'" *Mosley v. Kohl's Dep't Stores, Inc.*, 942 F.3d 752, 756 (6th Cir. 2019). A plaintiff can demonstrate a threat of future injury by establishing "a plausible intent to return to the noncompliant accommodation" or that she "would return, but is deterred from visiting the noncompliant accommodation because of the alleged accessibility barriers." *Id.* at 757 (quotations omitted). "The 'threat' of a prospective injury must be real and immediate and not premised upon the existence of past injuries alone." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102–03 (1983). A plaintiff is not required "to provide a definitive plan for returning to the accommodation itself to establish a threat of future injury." *Mosley*, 942 F.3d at 757.

6

Applying these constitutional principles depends on whether standing presents a factual or facial challenge. *See Solis v. Emery Fed. Credit Union*, 459 F. Supp. 3d 981, 986–87 (S.D. Ohio 2020) (citing *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 920, 330 (6th Cir. 2007)). A facial attack "challenges the jurisdictional sufficiency of the complaint given those facts." *Id.* at 987 (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). "When reviewing a facial attack, a district court takes the allegations in the complaint as true, similar to the approach employed in reviewing a Rule 12(b)(6) motion to dismiss." *Id.* (citation omitted). In a factual attack, in contrast, the district court must weight the conflicting evidence without a presumption of truthfulness. *Gentek Bldg. Prods. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007).

Here, in response to the Court's request for briefing on the issue, the parties submit a limited number of evidentiary and discovery materials. Plaintiffs attach several declarations that provide basic background and information about the National Federation of the Blind. (ECF No. 36-1; ECF No. 54-1; ECF No. 54-2; ECF No. 54-3.) They also provide declarations from NFB members who use Exact Care but have not received accommodations or inquired about doing so but were not offered accommodations despite their visual impairments. (ECF No. 36-2; ECF No. 54-5; ECF 54-9.) Other NFB members attest to accommodations that they have received from their mail-order pharmacies. (ECF No. 54-4; ECF No. 54-6.) And two visually impaired declarants express interest in using Exact Care if it provided certain

7

accommodations. (ECF No. 54-7; ECF No. 54-8.) For its part, Defendant attaches Plaintiffs' written responses to discovery requests. (ECF No. 37-1; ECF No. 53-1.)

In this posture, the record contains more information than just the pleadings, but far less than it will at the summary-judgment stage. As a case progresses, "the manner and degree of evidence required" to establish a court's jurisdiction will be different because they are not mere pleading requirements but part of a plaintiff's case. *Lujan*, 504 U.S. at 561. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss" a court "'presum[es] that general allegations embrace those specific facts that are necessary to support the claim.'" *Id.* (quoting *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 889 (1990)). On a motion for summary judgment, a plaintiff "can no longer rest on such 'mere allegation,' but must 'set forth' by affidavit or other evidence 'specific facts,' which for purposes of the summary judgment motion will be taken to be true." *Id.* (cleaned up). "And at the final stage, those facts (if uncontroverted) must be 'supported adequately by the evidence adduced at trial.'" *Id.* (quoting *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 115 n.31 (1979)).

Against this continuum of case progression and the showing required to prove standing, the Court treats the question and record at this stage as closer to a facial attack than a factual one. The Court will accept as true the allegations of the second amended complaint, qualified by Plaintiffs' discovery responses, but gives little weight to the self-serving declarations of non-parties that have yet to be corroborated or tested in discovery. The declarations providing general background about the

8

National Federation of the Blind provide information that could be provided in a pleading, so the Court treats them as such. They do not materially alter the inquiry from being a facial one.

**I.     The Standing of Ms. McKenney and Ms. Patterson for Injunctive Relief**

First, the Court considers whether Ms. McKenney and Ms. Patterson have established a real and immediate threat of future injury for purposes of seeking prospective injunctive relief. However, the parties disagree on the proper standard the Court should apply for establishing a threat of a future injury in cases under the Rehabilitation Act and the Affordable Care Act where a plaintiff no longer uses a defendant's services.

Because Ms. McKenney and Ms. Patterson have not used Exact Care since 2023 or 2022, respectively (ECF No. 30, ¶¶ 8–9, PageID #304), Defendant argues that they cannot establish any real immediate likelihood of future harm (ECF No. 53, PageID #509). Citing *Tirey v. Parkridge Med. Ctr., Inc.,* No. 1:23-cv-00038, 2025 WL 62248 (E.D. Tenn. Jan. 8, 2025); *Tomei v. Parkwest Med. Ctr.*, No. 3:19-cv-00041, 2022 WL 703656 (E.D. Tenn. Mar. 8, 2022); and *American Civil Liberties Union v. Trinity Health Corp.*, No. 15-cv-12611, 2016 WL 4267825 (E.D. Mich. Aug. 15, 2016), Defendant argues that it is not enough that Ms. McKenney and Ms. Patterson allege that they would "seriously consider" using Exact Care's services in the future. (ECF No. 53, PageID #509.) In cases under the Rehabilitation Act and the Affordable Care Act, Defendant maintains that a plaintiff must "demonstrate more than just a 'plausible intent to return' to the defendant's services to establish standing to pursue injunctive relief" because disability discrimination cases involving architectural or

structural barriers are distinguishable from cases involving the delivery of services. (*Id.*, PageID #510.)

For their part, Plaintiffs argue that they must show only an "intent to return" to Exact Care.  (ECF No. 54, PageID #542–53.)  Pointing to *Mosley*, 942 F.3d at 755, 758–59; and *Gaylor*, 582 F. App'x at 580, Plaintiffs note that the Sixth Circuit agreed that an intent to return satisfies the future injury requirement in disability rights cases, albeit under Title III of the Americans with Disabilities Act.  (ECF No. 54, PageID #543–45.)

The Sixth Circuit has not analyzed the "intent to return" standard in cases involving the Rehabilitation Act or the Affordable Care Act.  It has noted, however, that "analysis of claims under the Americans with Disabilities Act roughly parallels those brought under the Rehabilitation Act of 1973."  *McPherson v. Michigan High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 459–60 (6th Cir. 1997) (quoting *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996)).  With that guidance, and the Sixth Circuit's decisions in *Mosley* and *Gaylor*, the Court sees little basis for distinguishing between the intent to return standard in cases involving the delivery of service and those concerning architectural or structural barriers.  Indeed, the parties point to no textual or other statutory basis for making such a distinction.  The cases on which Defendant relies to argue for a higher standard make much of this distinction without providing a legal basis for doing so and/or come at the summary-judgment stage.  *See Tirey* 2025 WL 62248, at *4; *Tomei*, 2022 WL 703656, at *4; *Trinity Health*, 2016 WL 4267825, at *2.  Therefore, Ms. McKenney and

10

Ms. Patterson must establish "a plausible intent to return to the noncompliant accommodation" to demonstrate the requisite threat of future injury. *Mosley*, 942 F.3d at 757.

In the second amended complaint, Ms. McKenney avers that she started using Exact Care after hearing a presentation by a representative of Exact Care at a senior citizens' center. (ECF No. 30, ¶ 19, PageID #307.) Because Exact Care patients receive their medications by mail, it is more convenient than traditional brick-and-mortar pharmacies for Ms. McKenney because she did not need to rely on family members. (*Id.*, ¶ 21, PageID #308.) Even after she stopped using Exact Care in April 2023, and after months of overdosing on certain medications because she could not access information in an accessible manner (*id.*, ¶¶ 33–34, PageID #311), Ms. McKenney pleads that she would return to the company if it implemented policies or procedures that ensured effective communication with blind patients like her (*id.*, ¶ 53, PageID #315). Indeed, "Ms. McKenney would be interested in becoming an Exact Care patient again and again receiving her medicines through Exact Care, and she would seriously consider this possibility." (*Id.*)

As for Ms. Patterson, she also switched to Exact Care to avoid the inconvenience of relying on family members at a traditional pharmacy. (*Id.*, ¶ 55; *see also id.*, ¶ 60, PageID #316.) She alleges that medications she obtained from Exact Care contributed to her congestive heart failure and that she would not have taken them had she received information about those medications in an alternate format. (*Id.*, ¶¶ 68–72, PageID #317–18.) Like Ms. McKenney, Ms. Patterson pleads that she

11

would return to Exact Care if it changed its practices for visually impaired patients. (*Id.*, ¶ 80, PageID #320.) "Ms. Patterson would want to learn more about these changes and would seriously consider becoming an Exact Care patient again." (*Id.*)

Even if Exact Care made changes to its policies and procedures, the Court assumes that Ms. McKenney and Ms. Patterson would likely still face disability-related barriers in accessing Exact Care's services if they returned. *Mosley*, 942 F.3d at 761. Even though Ms. McKenney and Ms. Patterson have not alleged a definitive plan to return to Exact Care, they are not required to do so. *Id.* at 760. Accordingly, taking the facts as alleged as true regarding the circumstances surrounding their respective decisions to switch to Exact Care, the Court determines that Ms. McKenney and Ms. Patterson have met their burden of showing a plausible intent to return to Exact Care based on the record at this stage of the proceedings, which stands closer to presenting a facial challenge than a factual one. *Id.* at 757–58. That intent establishes a real and immediate threat of future injury. Therefore, Ms. McKenney and Ms. Patterson have standing to proceed with their claims for injunctive relief, at least for now. As the case progresses, their burden of establishing standing with "specific facts" of their intent to return will require more of them. *Lujan*, 497 U.S. at 889.

## II. Associational Standing

To satisfy associational standing, an organization must satisfy a three-part test: (1) "its members would otherwise have standing to sue in their own right"; (2) "the interests it seeks to protect are germane to the organization's purpose"; and (3) "neither the claim asserted nor the relief requested requires the participation of

12

individual members in the lawsuit." *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). Both Ms. McKenney and Ms. Patterson are members of NFB. Because they have standing to seek injunctive relief at this stage of the proceedings, the first prong of this test is satisfied.

### II.A. Germaneness to the NFB's Interests

"[T]he doctrine of associational standing recognizes that the primary reason people join an organization is often to create an effective vehicle for vindicating interests that they share with others." *International Union, UAW v. Brock*, 477 U.S. 274, 290 (1986). "Requiring that an 'association plaintiff be organized for a purpose germane to the subject of its member's claim raises an assurance that the association's litigators will themselves have a stake in the resolution of the dispute, and thus be in a position to serve as the defendant's natural adversary.'" *Dayton Area Chamber of Commerce v. Kennedy*, 147 F.4th 626, 632 (6th Cir. 2025) (quoting *United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 555–56 (1996)). In other words, there must be a reasonable connection between the subject matter of the suit and the association's knowledge and experience. *Id.* (citing *Building & Constr. Trades Council of Buffalo v. Downtown Dev., Inc.*, 448 F.3d 138, 149 (2d Cir. 2006)).

Against this standard, the question is whether the National Federation of the Blind satisfies the reasonable connection standard. In other words, the Court must determine whether the interests at stake in this case are germane to NFB's purpose as an organization. *Id.* at 632–33. On this score, the record presents an easy call. This lawsuit involves questions about the accessibility of visually impaired patients

13

to medical services through a mail-order pharmacy and the reasonable accommodations that might be available or that the law might (or might not) require. On these subjects, NFB has both knowledge and experience. Its "ultimate purpose" is the "complete integration of the blind into society on a basis of equality." (ECF No. 30, ¶ 11, PageID #305.) To advance that objective, NFB "has worked actively to ensure that the blind have an equal opportunity to access information related to their health care." (*Id.*) Specifically, NFB ensures that the blind "have access to information in accessible formats such as Braille, Large Print, and audio option, because, without such access, blind people cannot participate equally in society." (ECF No 54-1, ¶¶ 6–7, PageID #553.) NFB has worked on these issues since its founding. (*Id.*)

Because NFB's particular knowledge and expertise concerns equal access to medical information for the visually impaired and the subject matter of this case concerns blind patient's accessibility to medical information, the reasonable connection standard is satisfied. *Dayton Area Chamber of Commerce*, 147 F.4th at 632. Additionally, this determination is in line with other cases where a challenge to associational standing has failed because the germaneness (or the relationship between the subject of the lawsuit and purpose of the association) was direct. *See id.* at 633 (collecting cases). Therefore, the "key limiting principle" is met because NFB's interests in protecting the blind's access to medical information is germane to its purpose as an organization. *Id.* (citing *Hunt*, 432 U.S. at 343). Accordingly, the second prong is satisfied.

14

### II.B. Participation of Individual Members

The third element for associational standing embodies a prudential, not constitutional, requirement. *United Food and Com. Workers Union Loc. 75*, 517 U.S. 544, 554–55 (1996). Therefore, the third prong "is best seen as focusing on the[] matters of administrative convenience and efficiency, not on elements of a case or controversy within the meaning of the constitution." *Id.* at 557.

Under the third prong, the claims asserted, and the relief requested, must not require the participation of individual members of the association in the lawsuit. *Hunt*, 432 U.S. at 343. As a general rule, individual participation of members "is not normally necessary when an association seeks prospective or injunctive relief for its members." *International Union, United Auto., Aerospace and Agric. Implement Workers of Am. v. Brock*, 477 U.S. 274, 287–88 (1986). Where a court must consider "individual circumstances" of aggrieved members for either the claims asserted or the relief sought, individual participation is necessary. *Id.*

Because of the individual circumstances of Ms. McKenney and Ms. Patterson (and, presumably, of other visually impaired persons who are members of the National Federation of the Blind), allowing the organization to proceed on behalf of other members invites something of an advisory opinion regarding the requirements of the Rehabilitation Act and the Affordable Care Act and the types of accommodations each statute might require. But this aspect of associational standing is prudential, not constitutional in dimension, and the concern expressed does not override the constitutional requirements of Article III.

In any event, NFB does not proceed in the abstract. Ms. McKenney and Ms. Patterson sue on their own behalf, and NFB seeks only declaratory and injunctive relief, not damages. Specifically, NFB asks the Court to "[d]eclare that Defendant has a duty to provide equally effective access to all information it and its contractors provide to patients and patient representatives" and a permanent injunction requiring Exact Care "to develop and implement a comprehensive accessibility policy." (ECF No. 30, ¶¶ 2–3, PageID #330–31.) In doing so, NFB seeks that Exact Care be required to make medical information available to blind patients "in appropriately secure formats that are accessible to blind individuals, such as Braille, large print, audio CD, and Digital navigable formats supported by computers and/or digital talking-book players, transmitted through data CD, flash drive, e-mail, or other requested media." (*Id.*) In this respect, NFB does not seek accommodations on an individualized basis or to meet the individual circumstances of its members. Under current doctrine, it could bring a suit like this without one of its members as a plaintiff complaining about a specific alleged injury. Therefore, the third prong is satisfied.

\*   \*   \*

As a constitutional matter under Article III, the Court continues to harbor serious doubts that the National Federation of the Blind has standing. After all, NFB does not allege that *it* suffered an injury. Sure, its members might have. But the Constitution does not give an association, even one pursuing a broadly popular and laudable mission, a roving commission to right wrongs wherever it might see them. And it is difficult to see how the injury of an association's member enables another

16

person to sue on the member's behalf, particularly without the due-process protections of Rule 23 for the member, for example. *See, e.g.*, *FDA v. Alliance for Hippocratic Med.*, 602 U.S. 367, 398 (2024) (Thomas, J., concurring).

At any rate, on the law as it currently stands, as articulated most recently in *Dayton Area Chamber of Commerce v. Kennedy*, 147 F.4th 626 (6th Cir. 2025), the Court is constrained to find that the National Federation of the Blind has standing and may proceed with its claims in this lawsuit—again, at least based on the record in the current procedural posture. Finally, the Court notes that Defendant challenges the scope of the injunctive relief NFB may seek. (ECF No. 53, PageID #506–09.) But at this stage of the proceedings, the Court need not address that issue because it has not yet been determined whether NFB is entitled to such relief.

### III.  Additional Requests

At the end of its supplemental brief, Exact Care requests that the Court dismiss Ms. McKenney and Ms. Patterson's requests for declaratory and injunctive relief for lack of standing or to be allowed to file a separate motion to dismiss. (ECF No. 53, PageID #515.) Because it determines that Ms. McKenney and Ms. Patterson have standing to pursue their requests for declaratory and injunctive relief, the Court **DENIES** Defendant's request for dismissal and declines to entertain a motion to dismiss on these grounds.

Additionally, Plaintiffs request that they be allowed to discover the identity of Exact Care's blind customers to corroborate NFB's standing. (ECF No. 54, PageID #547–48.) Based on this ruling, the discovery Plaintiffs seek is not necessary in

17

connection with this motion. Therefore, the Court need not consider this request further at this time.

## CONCLUSION

For the foregoing reasons, the Court determines that Ms. McKenney and Ms. Patterson have standing to pursue declaratory and injunctive relief, and the National Federal of the Blind has associational standing.

**SO ORDERED.**

Dated: November 26, 2025

                                          J. Philip Calabrese
                                          United States District Judge
                                          Northern District of Ohio